UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**VANESSA HOTOPH**,

    Plaintiff,

vs.

**MVC CLINICAL PRACTICE-MI PC**,
A Michigan professional corporation,
d/b/a **METRO VEIN CENTERS**,
**A and G Aesthetics PLLC**, a
Michigan professional limited liability
Company, d/b/a **METRO VEIN CENTERS**,
**MVC MSO LLC**, a Delaware corporation,
And **ALBARON PARTNERS LP**,
A New York Limited Partnership,

    Defendant.

**DEMAND FOR JURY TRIAL**
Case No: 21 -
Honorable:

---

**Gregory A. Jones (P75318)**
GASIOREK, MORGAN, GRECO,
McCAULEY & KOTZIAN, P.C.
30500 Northwestern Hwy, Ste 425
Farmington Hills, MI 48334
P: (248) 865-0001
F: (248) 865-0002
gjones@gmgmklaw.com
rdonegan@gmgmklaw.com

---

**COMPLAINT AND JURY DEMAND**

NOW COMES, Plaintiff, VANESSA HOTOPH, by and through her attorneys, GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN, P.C., and for her complaint against Defendants, MVC CLINICAL PRACTICE-MI PC; A and G AESTHETICS, PLLC; MVC MSO, LLC; and ALBARON PARTNERS, LP (collectively, "METRO VEIN CENTERS") hereby submits the following:

1. This complaint arises out of the wrongful termination of Plaintiff's employment with Defendant in violation of the anti-retaliation provisions of the False Claims Act, 31 U.S.C. § 3730(h), the Michigan Whistleblower's Protection Act, M.C.L. § 15.361 et seq., and in violation of established public policy in Michigan, after Plaintiff raised concerns that Defendant's employees were intentionally misreading diagnostic studies in order to justify unnecessary procedures, thereby defrauding patients, private health insurance companies, and the State and Federal government.

## PARTIES

2. Plaintiff, VANESSA HOTOPH (hereinafter, "HOTOPH"), is an individual residing in the City of Livonia, County of Wayne, State of Michigan.

3. Defendant, MVC CLINICAL PRACTICE-MI PC is a Michigan Professional Corporation which does business and operates as METRO VEIN CENERS (hereinafter, "MVC Clinical Practice" or "METRO VEIN

CENTERS") with offices and a principal place of business in West Bloomfield, County of Oakland, State of Michigan.

4. Defendant A and G Aesthetics PLLC is a Michigan professional limited liability corporation which also does business and operates as Metro Vein Centers (hereinafter, "A and G Aesthetics PLLC" or "METRO VEIN CENTERS") with offices and a principal place of business in West Bloomfield, County of Oakland, State of Michigan.

5. Defendant MVC MSO LLC is a Delaware corporation with offices and a principal place of business in West Bloomfield, County of Oakland, State of Michigan, where it manages the operations, human resources, and other functions of Metro Vein Centers and employs individuals who work or Metro Vein Centers (hereinafter, "MVC MSO" or "METRO VEIN CENTERS").

6. Defendant ALBARON PARTNERS LP (hereinafter "ALBARON") is a New York Limited Partnership with offices in Long Island, New York, and West Bloomfield, County of Oakland, State of Michigan, and it owns and operates METRO VEIN CENTERS.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over HOTOPH'S claims under and pursuant to 28 U.S.C. §1331 (federal question jurisdiction) and 31 U.S.C. §§ 3730 and 3732(a) (False Claims Act).

8. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over HOTOPH'S pendant state claims for violations of the Michigan Whistleblowers' Protection Act, M.C.L. § 15.361 *et seq.*, the Michigan Health Care False Claims Act, M.C.L. § 752.1001 *et seq.*, and the Michigan Medicaid False Claims Act, M.C.L. § 400.601 *et seq.*

9. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) as the judicial district wherein a substantial part of the events or omissions giving rise to HOTOPH'S claims occurred and 31 U.S.C. § 3732(a) as the judicial district within which Defendants transact business.

## COMMON FACTUAL ALLEGATIONS

10. HOTOPH is a registered vascular technician.

11. METRO VEIN CENTERS operate as a clinical practice specializing in the diagnosis and treatment of varicose veins, spider veins, and other venous conditions.

12. METRO VEIN CENTERS hired HOTOPH as an ultrasound technician in or around April 2017.

13. HOTOPH initially worked part-time out of a clinic in Canton, Michigan.

14. While employed at the Canton, Michigan location, HOTOPH observed another technician (hereinafter referred to as "TS") improperly

4

conducting ultrasound scans. Specifically, HOTOPH witnessed TS measure noise on the scan as disease in order to justify unnecessary medical procedures.

15. In or around December 2017 HOTOPH began working full-time for METRO VEIN CENTERS.

16. Recognizing a pattern of concerning practices in diagnostic studies at METRO VEIN CENTERS, Dr. Max Hutton established a Compliance and Quality Assurance Team in or about October 2019.

17. HOTOPH was appointed to assist the Quality Assurance Team with the goal of making sure that ultrasounds were not being misread to justify unnecessary procedures.

18. HOTOPH and other members of the Quality Assurance Team utilized spreadsheets to track performance of METRO VEIN CENTERS' ultrasound technicians in order to assess whether they were engaging in inappropriate or unethical behaviors.

19. Ultimately, the Quality Assurance Team came to the conclusion that METRO VEIN CENTERS technologists were routinely measuring noise or artifact as reflux, and over-measuring diameters in reflux in order to justify unnecessary medical procedures.

20. In or around January 2020, HOTOPH was promoted to supervisor for Michigan and Pennsylvania.

21. HOTOPH reported to another member of the Quality Assurance Team, "CK."

22. In March 2020, the Canton location closed due to the COVID-19 pandemic.

23. On or about May 4, 2020, HOTOPH returned to work in the West Bloomfield location.

24. Upon returning to work, HOTOPH learned that CK had been told by METRO VEIN CENTERS Chief Operating Officer, Art Golden (hereinafter, "GOLDEN") to put the quality assurance work "on hold" for a period of time.

25. CK and HOTOPH were instead directed to focus their efforts on performing ultrasound scans.

26. Upon information and belief, METRO VEIN CENTERS required HOTOPH to return to scanning full-time in order to curtail her efforts to oppose the ongoing fraudulent practices at the clinics.

27. In or around June 2020, HOTOPH and the Quality Assurance Team resumed the review of METRO VEIN CENTERS' technicians' scans.

Their findings confirmed that the unethical and inappropriate behavior had continued without improvement.

28. On or about July 21, 2020, CK sent an e-mail summarizing the Quality Assurance Team's findings in performance reviews of METRO VEIN CENTER ultrasound technicians to GOLDEN, Chief Executive Officer Dimiti Ivanov (hereinafter, "IVANOV"), Chief Legal Officer Debo Adesina, and Chief Medical Officer Dr. Mason Mandy.

29. In this e-mail, CK raised concerns with ongoing unethical practices, and specifically noted that ultrasound technicians were inverting their spectral Doppler while performing ultrasounds, resulting in inaccurate findings of venous reflux.

30. CK attached "Quality Assurance Audit" documentation to support her concerns.

31. Specifically, CK attached a July 21, 2020 "Quality Assurance Audit" for METRO VEIN CENTERS technician "KC". She specifically noted as follows:

> [KC] is not following proper protocol in regards to the diagnostic quality of her imaging. The technologist is using unethical techniques to demonstrate reflux, including; augmenting with her probe, overmeasure spectral Doppler tracing to get to or over 500msec, and measuring noise on the spectral tracing to demonstrate reflux that is not evidence. [KC] reduces the scale when imaging the superficial system and

7

this causes above the baseline noise that is being measured as reflux.

All of these techniques cause a patient to receive procedures that are not medically necessary. This practice is unethical and fraudulent.

Metro Vein Centers and the physician could be liable for prosecution under the CMS guidelines.

***I am informing you that this practice must cease immediately.***

32. CK also attached a July 20, 2020 Quality Assurance Audit for METRO VEIN CENTER technician "ND," which stated as follows:

It appears that if a patient does not have very evident venous insufficiency the technologist is using unethical techniques to demonstrate reflux, including; inverting her spectral Doppler to have normal flow show above the baseline and measure as reflux, overmeasure spectral Doppler tracing to get to or over 500 msec, and measuring noise on the spectral tracing to demonstrate reflux that is not evident.

All of these techniques cause a patient to receive procedures that are not medically necessary. This practice is unethical and fraudulent.

Metro Vein Centers and the physician could be liable for prosecution under the CMS guidelines.

***I am informing you that this practice must cease immediately.***

33. CK also attached her July 20, 2020 "Quality Assurance Audit" for METRO VEIN CENTERS technician "SM," and again reiterated as follows:

> [SM] is not following proper protocol in regards to the diagnostic quality of her imaging. It appears that if a patient does not have very evident venous insufficiency the technologist is using unethical techniques to demonstrate reflux, including; inverting her spectral Doppler to have normal flow show above the baseline and measure as reflux, overmeasure spectral Doppler tracing to get to or over 500msec, and measuring noise on the spectral tracing to demonstrate reflux that is not evident.
>
> All of these techniques cause a patient to receive procedures that are not medically necessary. This practice is unethical and fraudulent.
>
> Metro Vein Centers and the physician could be held liable for prosecution under the CMS guidelines.
>
> ***I am informing you that this practice must cease immediately.***

34. CK was terminated by METRO VEIN CENTERS in a meeting with IVANOV on July 23, 2020, two days after sending the aforementioned email.

35. After CK was terminated, HOTOPH continued her work as supervisor and continued Quality Assurance activities.

36. As part of her activities, HOTOPH discovered that METRO VEIN CENTERS technicians had been inappropriately instructed not to rule out deep vein thrombosis ("DVT") for follow up examinations, and to only look for findings that required treatment.

9

37. HOTOPH directed the technicians to cease this practice because the failure to rule out DVT before augmenting the leg could cause injury to the patient.

38. In or around August 2020, GOLDEN requested that all the technicians and physicians visit a METRO VEIN CENTERS clinic in New York to see how they do things there.

39. HOTOPH objected and told GOLDEN that she had seen the scans from the New York technicians as part of her work with the Quality Assurance Team, and that their work product was inferior and unethical.

40. HOTOPH further expressed to GOLDEN that she felt as though by objecting she was putting a target on her back. When asked why she felt that way, she reminded GOLDEN that anyone who speaks out at METRO VEIN CLINICS ends up terminated. At that time, HOTOPH was the last remaining employee at METRO VEIN CLINICS who worked on the Quality Assurance Team.

41. On or about August 26, 2020, HOTOPH filed a report with the United States Department of Health and Human Services, Office of the Inspector General, citing METRO VEIN CENTERS unethical practices, including, but not limited to routinely taking inaccurate measurements,

improperly reading noise as disease, and inverting images in order to justify unnecessary medical procedures.

42. On or about November 25, 2020, METRO VEIN CENTERS terminated HOTOPH's employment.

## COUNT I
**Unlawful Retaliation in Violation of the False Claims Act**
*Against all Defendants*

43. HOTOPH re-alleges and incorporates by reference the preceding paragraphs of her Complaint as though more specifically restated and set forth herein.

44. While employed with METRO VEIN CENTERS, HOTOPH objected to and attempted to stop METRO VEIN CENTERS from knowingly presenting false or fraudulent claims by their technicians engaging in unethical practices designed to cause patients to receive unnecessary procedures.

45. The practices to which HOTOPH objected in fact lead patients of METRO VEIN CENTERS to receive fraudulent and unnecessary medical procedures.

46. Some of these fraudulent and unnecessary medical procedures performed by METRO VEIN CENTERS were in fact presented for

reimbursement to the United States Government through the Centers for Medicare & Medicaid Services ("CMS").

47. 31 U.S.C. § 3729 provides, in relevant part:

> Any person who (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim… is liable to the United States Government for a civil penalty of not less than $5,000.0 and not more than $10,000.00… plus 3 times the amount of damages which the Government sustains because of the act of that person.

48. By opposing METRO VEIN CENTERS' unethical and fraudulent practices, described above, HOTOPH engaged in efforts to stop METRO VEIN CENTERS' violations of the False Claims Act, 31 U.S.C. § 3729 *et seq*.

49. METRO VEIN CENTERS terminated HOTOPH's employment in retaliation for her efforts to stop METRO VEIN CENTERS' violations of the False Claims Act, *supra*.

50. 31 U.S.C. § 3730(h) provides as follows:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

51. As a direct and proximate result of METRO VEIN CENTERS' retaliatory and unlawful discrimination, HOTOPH incurred damages, including but not limited to a loss of compensation, loss of fringe benefits, embarrassment, humiliation, betrayal and emotional distress, and other incidental and consequential losses.

## COUNT II
### Violation of Michigan Whistleblower's Protection Act
*Against all Defendants*

52. HOTOPH re-alleges and incorporates by reference the preceding paragraphs of her Complaint as though more specifically restated and set forth herein.

53. MVC Clinical Practice, A and G Aesthetics, MVC MSO, and ALBARON are "employers" as that term is defined by the Whistleblower's Protection Act (hereinafter, "WPA").

54. The U.S. Department of Health and Human Services Office of the Inspector General is a public body within the meaning of the WPA.

55. HOTOPH was at all relevant times an individual employee within the meaning of the WPA.

56. During her employment with METRO VEIN CENTERS, as alleged above, HOTOPH objected to unethical and illegal fraudulent diagnostic and billing practices performed by METRO VEIN CENTERS.

57. These illegal practices were in violation of multiple state and federal laws, including but not limited to:

   a. The False Claims Act, 31 U.S.C. § 3729 *et seq.*;

   b. Michigan's Prohibition on Common Law Fraud, M.C.L § 750.280;

   c. The Michigan Public Health Code, M.C.L. §333.2894;

   d. The Michigan Consumer Protection Act, M.C.L. §445.901 *et seq.*;

   e. The Michigan Health Care False Claims Act, M.C.L. §752.1001 *et seq.;* and

   f. The Michigan Medicaid False Claims Act, M.C.L. §400.601 *et seq.*

58. On or about August 26, 2020, HOTOPH reported METRO VEIN CENTERS violation of law to the United States Department of Health and Human Services, Office of the Inspector General.

59. The WPA prohibits employers from discharging or otherwise discriminating against an employee because that employee has reported or is about to report a violation or suspected violation of law to a member of a public body.

60. Defendants METRO VEIN CENTERS decision to terminate HOTOPH's employment was motivated, in whole or in part, by retaliatory animus resulting from HOTOPH's actions of reporting and/or being about to report the violations of law described above to a member of a public body in violation of the WPA.

61. Defendants actions in violating HOTOPH's rights under the WPA were intentional.

62. As a direct and proximate result of Defendants' wrongdoing, HOTOPH has suffered damages including but not limited to loss of earnings, loss of earning capacity, past and future lost earnings, the value of fringe and retirement benefits, lost job and career opportunities, damage to her good name and reputation in the community, mental and emotional distress, humiliation and embarrassment, loss of enjoyment of the ordinary pleasures of everyday life, and the loss of the ability to pursue employment of choice.

## COUNT III
**Wrongful Discharge in Violation of Michigan Public Policy**
*Against all Defendants*

63. HOTOPH re-alleges and incorporates by reference the preceding paragraphs of her Complaint as though more specifically restated and set forth herein.

64. During the course of her employment with Defendants, HOTOPH refused to acquiesce in violations of law, and directly objected to METRO VEIN CENTERS' fraudulent and illegal practices to METRO VEIN CENTERS' executives and upper management.

65. In objecting to METRO VEIN CENTERS' technicians unethical and unlawful diagnostic practices, HOTOPH communicated to METRO VEIN CENTERS that she would not participate or engage in activities that were fraudulent or illegal.

66. METRO VEIN CENTERS' decision to terminate HOTOPH's employment violates the clearly established public policy of the State of Michigan and constitutes a wrongful discharge.

67. As a direct and proximate result of Defendants' wrongdoing, HOTOPH has suffered damages including but not limited to loss of earnings, loss of earning capacity, past and future lost earnings, the value of fringe and retirement benefits, lost job and career opportunities, damage to her good name and reputation in the community, mental and emotional distress, humiliation and embarrassment, loss of enjoyment of the ordinary pleasures of everyday life, and the loss of the ability to pursue employment of choice.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, VANESSA HOTOPH, demands judgment against each of the Defendants as follows:

A. Plaintiff prays that the Court exercise its equitable power under the WPA and the False Claims Act and immediately reinstate her to her previous position;

B. Award Plaintiff all lost wages and restore all fringe benefits, past (backpay) and future (frontpay), that she has or will suffer;

C. Award Plaintiff compensatory damages for the mental anguish and emotional distress that she has suffered, in addition to the harm that Defendants have inflicted upon Plaintiff's reputation and future employability;

D. Award Plaintiff exemplary damages;

E. Award Plaintiff's reasonable attorney fees, costs and interest; and

F. Award such other relief as this Court deems just and proper.

Respectfully submitted,

GASIOREK, MORGAN, GRECO,
McCAULEY & KOTZIAN, P.C.,

_____
Greg Jones (P75318)
Attorneys for Plaintiff
30500 Northwestern Hwy, Ste 425
Farmington Hills, MI 48334
248-865-0001

Date: February 24, 2021

## **DEMAND FOR TRIAL BY JURY**

Plaintiff VANESSA HOTOPH, by her attorneys GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN, P.C., demands a trial by jury.

Respectfully submitted,

GASIOREK, MORGAN, GRECO,
McCAULEY & KOTZIAN, P.C.,

_____
Greg Jones (P75318)
Attorneys for Plaintiff
30500 Northwestern Hwy, Ste 425
Farmington Hills, MI 48334
248-865-0001

Date: February 24, 2021